■ WILBER NAZARIO, Respondent, v FORTUNATO & FORTUNATO, PLLC, et al., Appellants. [822 NYS2d 236]—

Order, Supreme Court, Bronx County (Stanley Green, J.), entered on or about March 8, 2006, denying defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

This is a legal malpractice action predicated upon the failure of defendants, a law firm and its two individual members specializing in workers' compensation claims, to commence timely a personal injury action arising out of an injury plaintiff allegedly sustained in the course of his employment. On August 29, 2000, plaintiff was engaged in plumbing work in the basement of an office building when a rusty overhead pipe fell on his shoulder, allegedly causing him to sustain injuries, specifically, a tear to his right rotator cuff and herniated discs in the cervical spine resulting in limitations of motion. According to plaintiff, while defendants did handle the workers' compensation aspects of his claim, realizing well over $100,000 in settlement, they failed to pursue a negligence claim against the owner of the office building and allowed the applicable statute of limitations to lapse. Plaintiff commenced this action in May 2004, nearly four years after the accident. Although defendants claim they decided not to sue the building owner because of plaintiff's conflicting accounts of the accident and the lack of evidence of the owner's liability, they limited their proofs in their "renewed" motion for summary judgment dismissal of this action to the absence of any causal relationship between the injury claimed and the August 2000 accident. Supreme Court denied the motion, finding that defendants' proofs failed to address the injury to plaintiff's right shoulder, which plaintiff alleges he sustained as a result of that accident.

Exhaustive discovery that produced documentary and testimonial evidence of plaintiff's three automobile accidents both prior and subsequent to the instant accident, and personal injury actions based on two of them, revealed that in those actions, brought by the same attorney who represents him in this action, plaintiff has repeatedly claimed to have sustained exactly the same type of soft tissue injuries and limitations in range of motion that he now ascribes to the August 2000 accident. Plaintiff failed, without exception, to inform any of the physicians or therapists who treated or examined him for the injuries alleged to have been sustained in the August 2000 accident of his prior automobile accidents, one in 1991 and another in 1999, and the injuries and treatment resulting therefrom. Defendants also ascertained that Dr. Velazquez, the neurologist he had seen

in connection with both the August 2000 incident and a subsequent May 2005 automobile accident, found that plaintiff's right shoulder, allegedly injured in the earlier incident, has a full range of motion.

In the lawsuit stemming from the 1991 accident, plaintiff claimed injuries to his head, neck, back and shoulders. In the suit arising out of the 1999 accident, he claimed injuries to his neck and upper back. According to plaintiff, the 1999 accident left his neck in constant pain; it "was always bothering me and still bothers me." When asked by Dr. Kazdan, the treating physician for the August 2000 accident, if he had ever been involved in an automobile accident, plaintiff answered, "None." Although seen by this doctor approximately 170 times in the next three years and 10 months, plaintiff never mentioned either of the prior actions or injuries, nor the extensive medical treatment he had received. Although asked, he never told Dr. Velazquez about these accidents or injuries either. Significantly, plaintiff denied ever having previously suffered injury to his neck, upper back or left shoulder. Plaintiff also withheld this relevant medical history from the two physicians, Drs. Schnapper and Epstein, who independently examined him in connection with his workers' compensation claim for the August 2000 accident. Dr. Schnapper concluded that "[a]ssuming that the history obtained is correct, and based on my physical examination, the diagnoses are causally related to the accident of 8/29/00." Dr. Epstein concluded, "If the history as given by the examinee is correct, then a causal relationship exists between the accident of 8/29/00 and the diagnoses."

As a result of a workplace accident on July 8, 2000, plaintiff submitted a workers' compensation claim in which he answered "none" to the inquiry: "Other than what you have already listed, list any other medical conditions for which you were treated before the [July 2000 accident]." The only other injuries reported related to previous work injuries, in 1984 and 1992, purportedly to the "left, right eye" and "left knee" respectively. In any event, the workplace accident of August 29, 2000 allegedly caused plaintiff, once again, to sustain injuries to his head, neck, back and shoulders, resulting in limitations in his range of motion similar to those he had previously claimed. Significantly, he did not seek any treatment for these "new" injuries until almost four months after the accident.

As noted, plaintiff was also involved in an automobile accident in May of 2005, as a result of which he sustained "Lower back injuries. Left shoulder injury." He thereupon consulted Drs. Kazdan and Velazquez. In her deposition, Dr. Velazquez

testified that plaintiff attributed the limitations in his range of motion to the automobile accident of May 2005, not to the August 2000 workplace accident. When she examined plaintiff in July and August 2005, she found that his right shoulder, allegedly injured in the August 2000 accident, "ha[d] a full range of motion."

In opposition to defendants' motion, plaintiff offered only his own affidavit and an affirmation by counsel; he did not offer a single affirmation, affidavit or sworn report from any physician or therapist to confirm that his alleged injuries were caused by the August 2000 accident rather than the prior and subsequent automobile accidents. Indeed, in their respective opposing papers, neither plaintiff nor his attorney makes any mention of plaintiff's allegedly "serious" injuries as a result of prior automobile accidents or the claimed limitations in his range of motion resulting therefrom. While plaintiff offered a brief excerpt from Dr. Velazquez's deposition that, based on the history furnished her, she concluded plaintiff had suffered "right shoulder injury and post-traumatic cervical radiculopathy" from the August 2000 incident, that determination was obviously based upon the selective medical history supplied by plaintiff. In that same deposition, after testifying that in 2005 plaintiff had full range of motion to the right shoulder, Dr. Velazquez conceded, "Instead of permanent disability like a total disability I gave [plaintiff] in 2000, he may have literally no disability or minimal disability, partial."

Defendants, as the proponent of summary judgment dismissal, had the burden of making a prima facie showing as to the lack of any material question of fact (see *JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 384 [2005]). As this record shows, defendants tendered sufficient evidence that the August 29, 2000 accident did not result in any serious injury, as claimed, and they are thus not liable for declining to pursue a legal action in plaintiff's behalf against the owner of the premises where the incident took place. "A plaintiff's burden of proof in a legal malpractice action is a heavy one. The plaintiff must prove first the hypothetical outcome of the underlying litigation and, then, the attorney's liability for malpractice in connection with that litigation" (*Lindenman v Kreitzer*, 7 AD3d 30, 34 [2004]). In effect, a plaintiff in such an action must prove a case within a case. "Only after the plaintiff establishes that he would have recovered a favorable judgment in the underlying action can he proceed with proof that the attorney engaged to represent him in the underlying action was negligent in handling that action and that the attorney's negligence was the proximate cause of

the plaintiff's loss since it prevented him from being properly compensated for his loss" (*id.*).

Except for the excerpt from Dr. Velazquez's testimony and plaintiff's self-serving affidavit to the effect that he was injured on August 29, 2000 when an overhead pipe fell on his shoulder, causing him to suffer cervical disc herniations, a disc bulge, "cervicothoracic facet syndrome and radiculpathy [*sic*] and muscular spasm; and rotator cuff tear of the right shoulder," none of the exhibits and documents appended to the opposition papers is, in any way, responsive to defendants' motion. The Velazquez deposition excerpt omits her testimony that plaintiff's "deficits, ailments, injuries, conditions et cetera" were related not to the August 2000 accident but, instead, to the May 2005 automobile accident. Neither plaintiff nor his counsel mentioned his various other accidents, his injuries and treatment or the personal injury actions he brought as a result, and his sworn allegations in those lawsuits.

In such circumstances, plaintiff has failed to counter defendants' submissions and raise a triable issue of fact as to whether he was injured as a result of the August 2000 accident. Thus, he cannot show that he would have prevailed in any action against the building owner "but for" defendants' alleged malpractice. Nor has plaintiff shown that the facts necessary to defeat plaintiff's motion are in the exclusive knowledge of defendants, whom he has yet to depose. Defendants are obviously not competent to testify as to whether plaintiff sustained any injuries as a result of the August 2000 accident.

Defendants' motion for summary judgment dismissing the complaint should have been granted. Concur—Buckley, P.J., Tom, Saxe, Sullivan and Williams, JJ.